STATE OF RHODE ISLAND
PROVIDENCE S.C.

SUPERIOR COURT

MARC S. WEINBERG :

v.

C.A. No.: 07-4850

PORSCHE CARS NORTH AMERICA, :
INC., PORSCHE FINANCIAL :
SERVICES, INC. and EQUIFAX, INC. :

## COMPLAINT

### PARTIES

1. Plaintiff, Marc S. Weinberg, is a resident of the City of Seekonk, Bristol County, Massachusetts.

2. Defendant, Porsche Cars North America, Inc. ("PCNA"), upon information and belief, is a Georgia corporation doing business within the State of Rhode Island.

3. Defendant, Porsche Financial Services, Inc.("PFS"), upon information and belief, is a Delaware corporation doing business within the state of Rhode Island.

4. Defendant, Equifax, Inc. ("Equifax"), upon information and belief, is a Georgia corporation doing business within the State of Rhode Island.

5. Jurisdiction of this court is pursuant to R.I.G.L. §§ 8-2-13, 9-30-1 and 6-13.1-5.2.

### FACTS

6. On or about June 13, 2003 Plaintiff entered into a motor vehicle lease agreement with UAG, Westbay IP, LLC d/b/a Inskip Porsche ("Inskip"), relative to a 2002 Porsche 911 Turbo, VIN WPOAB299X2S685594, wherein Plaintiff was to make thirty-five (35) monthly payments of $1,319.41 due on the thirteenth (13th) of each month. **(Exhibit A.)**

7. Subsequently, plaintiff encountered numerous problems with the subject vehicle, including, but not limited to, problems with the transmission, clutch, and engine, which problems caused the subject vehicle to be out of service for a minimum of 148 days.

8. As a result of the aforesaid, Plaintiff and Defendants, PCNA and PFS, entered into an agreement whereby Plaintiff agreed to accept payment from PCNA in the amount of $10,905.28 and to forward that amount to PFS in exchange for full settlement of all claims against Plaintiff by PCNA, PFS, and/or Inskip. **(Exhibit B.)**

9. Pursuant to said agreement, Plaintiff received payment in the amount of $10,905.28 and forwarded the same to PFS on or about January 11, 2006, thereby concluding and resolving any and all claims on behalf of or against Plaintiff relative to the subject vehicle and PCNA, PFS, and/or Inskip. **(Exhibit C.)**

10. Thereafter, Plaintiff began receiving, and continues to receive, invoices from PFS depicting monies owed by Plaintiff in connection with the same lease agreement. **(Exhibit D.)**

11. Plaintiff's account with PFS continues to be held as outstanding, in direct violation of the agreement entered into by the parties.

12. Subsequently, Defendants notified Equifax of Plaintiff's allegedly delinquent account. **(Exhibit E.)**

13. Despite numerous and repeated demands by Plaintiff, PFS, PCNA, and Equifax continue to refuse to address the fact that Plaintiff's account is erroneously listed as outstanding and refuse to return Plaintiff's credit standing to the status quo.

**COUNT I**
**(Unfair Trade Practice v. PCNA)**

14. Plaintiff repeats and realleges paragraphs 1-13 as if fully set forth herein.

15. Defendant, PCNA, is in violation of R.I.G.L. § 6-13.1-1 *et seq.*, the Rhode Island Deceptive Trade Practices Act.

**WHEREFORE**, Plaintiff demands judgment against Defendant, PCNA, in the amount of his damages, including punitive damages, compensatory damages, and consequential damages, plus interest, costs and fees and whatever other damages this honorable Court deems fit and just.

**COUNT II**
**(Unfair Trade Practice v. PFS)**

16. Plaintiff repeats and realleges paragraphs 1-15 as if fully set forth herein.

17. Defendant, PFS, is in violation of R.I.G.L. § 6-13.1-1 *et seq.*, the Rhode Island Deceptive Trade Practices Act.

**WHEREFORE**, Plaintiff demands judgment against Defendant, PFS, in the amount of his damages, including punitive damages, compensatory damages, and consequential damages, plus interest, costs and fees and whatever other damages this honorable Court deems fit and just.

**COUNT III**
**(Unfair Trade Practice v. Equifax)**

18. Plaintiff repeats and realleges paragraphs 1-17 as if fully set forth herein.

19. Defendant, Equifax, is in violation of R.I.G.L. § 6-13.1-1 *et seq.*, the Rhode Island Deceptive Trade Practices Act.

**WHEREFORE**, Plaintiff demands judgment against Defendant, Equifax, in the amount of his damages, including punitive damages, compensatory damages, and consequential damages,

**COUNT I**
**(Unfair Trade Practice v. PCNA)**

14. Plaintiff repeats and realleges paragraphs 1-13 as if fully set forth herein.

15. Defendant, PCNA, is in violation of R.I.G.L. § 6-13.1-1 *et seq.*, the Rhode Island Deceptive Trade Practices Act.

**WHEREFORE,** Plaintiff demands judgment against Defendant, PCNA, in the amount of his damages, including punitive damages, compensatory damages, and consequential damages, plus interest, costs and fees and whatever other damages this honorable Court deems fit and just.

**COUNT II**
**(Unfair Trade Practice v. PFS)**

16. Plaintiff repeats and realleges paragraphs 1-15 as if fully set forth herein.

17. Defendant, PFS, is in violation of R.I.G.L. § 6-13.1-1 *et seq.*, the Rhode Island Deceptive Trade Practices Act.

**WHEREFORE,** Plaintiff demands judgment against Defendant, PFS, in the amount of his damages, including punitive damages, compensatory damages, and consequential damages, plus interest, costs and fees and whatever other damages this honorable Court deems fit and just.

**COUNT III**
**(Unfair Trade Practice v. Equifax)**

18. Plaintiff repeats and realleges paragraphs 1-17 as if fully set forth herein.

19. Defendant, Equifax, is in violation of R.I.G.L. § 6-13.1-1 *et seq.*, the Rhode Island Deceptive Trade Practices Act.

**WHEREFORE,** Plaintiff demands judgment against Defendant, Equifax, in the amount of his damages, including punitive damages, compensatory damages, and consequential damages,

plus interest, costs and fees and whatever other damages this honorable Court deems fit and just.

**COUNT IV**
**(Negligence v. PFS)**

20. Plaintiff repeats and realleges paragraphs 1-19 as if fully set forth herein.

21. Defendant, PFS, negligently and erroneously reported to Defendant, Equifax, and carried as a receivable, Plaintiff's balance as aforesaid.

22. As a direct result of the negligence of Defendant, PFS, Plaintiff sustained damages.

**WHEREFORE**, Plaintiff demands judgement against Defendant, PFS, in the amount of his damages, including compensatory damages, punitive damages, consequential damages, plus interest, costs and attorney fees and whatever other damages this honorable Court deems fit and just.

**COUNT V**
**(Violation of Fair Debt Collection Practices Act)**

23. Plaintiff repeats and realleges paragraphs 1-22 as if fully set forth herein.

24. Defendant, Equifax, has violated 15 U.S.C. § 1692 *et seq.*, the United State Fair Debt Collection Practices Act.

**WHEREFORE**, Plaintiff demands judgement against Defendant, Equifax, in the amount of his damages, including compensatory damages, punitive damages, and consequential damages, plus interest, costs and attorney fees and whatever other damages this honorable Court deems fit and just.

**COUNT VI**
**(Declaratory Judgment)**

25. Plaintiff repeats and realleges paragraphs 1-24 as if fully set forth herein.

**WHEREFORE**, pursuant to R.I.G.L. § 9-30-1, Plaintiff demands a declaration and/or

order that:

(1) Defendant, PFS, forthwith delete any balances due on Plaintiff's account as noted above; and

(2) Defendant, Equifax, be directed and ordered to correct its records and to notify any and all creditors or potential creditors of Plaintiff as to the noted misinformation.

**COUNT VII**
**(Preliminary/Permanent Injunction)**

26. Plaintiff repeats and realleges paragraphs 1-25 as if fully set forth herein.

27. Plaintiff's claims against Defendants, PFS and Equifax, have a strong likelihood of success on the merits.

28. The acts of Defendant, PFS, in falsely reporting an outstanding indebtedness and of Defendant, Equifax, in failing to remove the disputed and incorrect information from Plaintiff's credit report, has caused Plaintiff the risk of irreparable harm.

29. The acts of Defendants, PFS and Equifax, have left Plaintiff without an adequate remedy at law.

30. The interests of public policy favor the granting of equitable relief in favor of Plaintiff.

**WHEREFORE**, pursuant to Rule 65, Plaintiff demands injunctive relief as follows:

(1) That Defendant, PFS, be directed to remove from all records Plaintiff's name as a debtor to PFS, Inskip and/or PCNA;

(2) That Defendant, Equifax, be directed to delete and/or otherwise remove said information from Plaintiff's credit report; and

(3) That Defendant, Equifax, be directed to supply corrected credit reports to any and all parties that have requested credit information containing the aforesaid information.

Plaintiff,
***Marc S. Weinberg***
By his Attorneys,

Girard R. Visconti (#0566)
David L. Fine, Esq. (#7368)
***Visconti & Boren Ltd.***
55 Dorrance Street
Providence, RI 02903
(401) 331-3800 (Telephone)
(401) 421-9302 (Facsimile)

Dated: September 13, 2007

# MOTOR VEHICLE LEASE AGREEMENT

PORSCHE

1. LESSEE AND LESSOR.

LESSEE(S) and CO-LESSEE, if any, Name and Address

MARC S WEINBERG
82 TOLBOT WAY
SOLKUNK MA 02771

LESSOR (Dealer) Name and Address

INSK 2 PORSCHE
15179 BALD HILL ROAD
WARWICK RI 02886

VEHICLE'S GARAGING ADDRESS (if different than Lessee's address)

DATE 06/13/2003

ACCOUNT NUMBER

LEASE TERM 36 month

Lessee(s) and Co-Lessee, if any, (collectively "Lessee," "you" and "your") agree to lease from Lessor ("Lessor") the leased vehicle described below ("Vehicle") according to terms and conditions set forth on the front and back of this lease agreement ("Lease"). You acknowledge that this Lease will be assigned to Porsche Financial Services, Inc. or an assignee designated by Porsche Financial Services, Inc. (collectively "Assignee").

2. VEHICLE DESCRIPTIONS.

This is a Single Payment Lease if this box is checked:

A. LEASED VEHICLE. ☐ New ☒ Used Primary Use: ☒ Personal ☐ Business

| Year | Make | Model | Body Style | Odometer Reading | Vehicle Identification No. |
|---|---|---|---|---|---|
| 2002 | PORSCHE | 911 TURBO | 2 DOOR COU | 10357 | WP0AB299X2S685594 |

B. TRADE-IN VEHICLE. Year Make Model

**3. AMOUNT DUE AT LEASE SIGNING OR DELIVERY** (Itemized below)* $ 1405.41

**4. MONTHLY PAYMENTS OR SINGLE PAYMENT**
A. Your first Monthly Payment of $ 1319.41 is due on JUNE 13TH 2003 followed by 35 payments of $ 1319.41 due on the 13th of each month.
B. The total of your Monthly Payments is $ 47498.76
C. If this is a Single Payment Lease, your Single Payment of $ N/A is due on N/A, which is at Lease Signing or Delivery as shown in Section 7(A)(3).

**5. OTHER CHARGES** (Not part of your Monthly Payment or Single Payment)
A. Termination Fee (if you do not purchase the Vehicle) $ 350.00
B. N/A $ N/A
C. Total $ 350.00

**6. TOTAL OF PAYMENTS** (The amount you will have paid by the end of the Lease) $ 47934.76
(Section 3 plus Section 4(B) plus Section 4(C) plus Section 5(C) minus Section 7(A)(2) minus Section 7(A)(3))

7. *ITEMIZATION OF AMOUNT DUE AT LEASE SIGNING OR DELIVERY.

A. Amount Due at Lease Signing or Delivery:

| | |
|---|---|
| (1) Capitalized Cost Reduction | $ N/A |
| (2) First Monthly Payment | 1319.41 |
| (3) Single Payment | N/A |
| (4) Title Fees | N/A |
| (5) Registration Fees | 86.00 |
| (6) License Fees | N/A |
| (7) Sales or Use Tax | N/A |
| (8) N/A | N/A |
| (9) N/A | N/A |
| (10) Total | $ 1405.41 |

B. How the Amount Due at Lease Signing or Delivery will be Paid:

| | |
|---|---|
| (1) Net Trade-in Allowance | $ N/A |
| (2) Rebates and Noncash Credits | N/A |
| (3) Amount to be Paid in Cash | 1405.41 |
| (4) Total | $ 1405.41 |

8. YOUR MONTHLY PAYMENT OR SINGLE PAYMENT IS DETERMINED AS SHOWN BELOW:

A. Gross Capitalized Cost. The agreed upon value of the Vehicle ($ 93520.00) and any items you pay over the Lease Term (such as service contracts, insurance, and any outstanding prior credit or lease balance) ........ $ 94395.00
If you want an itemization of this amount, please check this box. ☒

B. Capitalized Cost Reduction. The amount of any Net Trade-in Allowance, rebate, noncash credit, or cash you pay that reduces the Gross Capitalized Cost ........ N/A

C. Adjusted Capitalized Cost. The amount used in calculating your Base Monthly Payment or Base Single Payment ... = 94395.00

D. Residual Value. The value of the Vehicle at the end of the Lease used in calculating your Base Monthly Payment or Base Single Payment ... [illegible]

E. Depreciation and any Amortized Amounts. The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term ...... = 21790.10

F. Rent Charge. The amount charged in addition to the Depreciation and any Amortized Amounts ........ + 23446.78

G. Total of Base Monthly Payments or Single Payment. The Depreciation and any Amortized Amounts plus the Rent Charge ........ = 45236.88

H. Lease Payments. The number of payments in your Lease ÷ 36

I. Base Monthly Payment or Base Single Payment ..... = 1256.58

J. Administrative Charge ........ + N/A

K. Monthly or Total Sales/Use Tax ........ + 62.83
N/A + N/A

L. Total Monthly Payment ("Monthly Payment") or

your Base Monthly Payment or Base Single Payment

9. Residual Value The value of the Vehicle at the end of the Lease used in calculating your Base Monthly Payment or Base Single Payment ... 22344.00

Monthly or Total Sales/Use tax ...

Total Monthly Payment ("Monthly Payment") or Total Single Payment ("Single Payment") ... $ 1319.4

Early Termination. You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.

9. EXCESSIVE WEAR AND USE. You may be charged for Excess Wear and Use based on our standards for normal use and for mileage in excess of 12000 miles per year at the rate of $0.30 per mile.

10. PURCHASE OPTION AT END OF LEASE TERM. You have an option to purchase the Vehicle "AS IS" at the end of the Lease Term for the sum of the Residual Value, plus any past due Monthly Payments and any other amount due under this Lease, plus any official fees, taxes and other charges related to purchase of the Vehicle.

Other Important Terms. See your Lease documents for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

Pennsylvania Notice: If you do not meet your Lease obligations, you may lose the Vehicle.

11. ESTIMATED OFFICIAL FEES AND TAXES.

The estimated amount you will pay for official and license fees, registration, title, and taxes over the term of your Lease, whether included in your Monthly Payments or Single Payment or assessed otherwise:

| | |
|---|---|
| A. Estimated Sales/Use Tax | $ 2261.88 |
| B. Estimated Personal Property, Excise or Other Taxes | $ 4200.00 |
| C. Estimated License, Registration and Certificate of Title Fees | $ 3600.00 |
| D. Total of Estimated Official Fees and Taxes | $ 10061.88 |

The actual total of fees and taxes may be higher or lower depending on the tax rates in effect or the value of the Vehicle at the time a fee or tax is assessed.

12. WARRANTIES.

If the Vehicle is new, it is covered by the standard manufacturer's new vehicle warranty. If the vehicle is used, it is only covered by the express warranty(ies) identified below:

☐ The Vehicle is covered by the remainder of the standard manufacturer's new vehicle warranty.

☐ The Vehicle is covered by the standard manufacturer's used vehicle warranty.

Lessor assigns to you all rights Lessor has under any of these warranties. You acknowledge that you have received a copy of the indicated warranties.

**Lessor makes no warranties or representations, either express or implied as to the Vehicle or any part or accessory thereof. Lessor makes no warranty of merchantability or fitness of the Vehicle for any particular purpose or any other representation or warranty whatsoever. If this Lease is signed in Connecticut, Kansas, Maine, Massachusetts, Mississippi, Vermont (if the Vehicle is new) or West Virginia, Lessor does not exclude any implied warranty of merchantability or fitness for a particular purpose.**

13. SIGNATURES.

YOU AGREE TO ALL PROVISIONS OF THIS LEASE INCLUDING THOSE ON THE REVERSE SIDE HEREOF WHICH ARE INCORPORATED HEREIN BY REFERENCE.

**THIS IS A LEASE AGREEMENT. THIS IS NOT A PURCHASE AGREEMENT. PLEASE REVIEW THESE MATTERS CAREFULLY AND SEEK INDEPENDENT PROFESSIONAL ADVICE IF YOU HAVE ANY QUESTIONS CONCERNING THIS TRANSACTION. YOU ARE ENTITLED TO AN EXACT COPY OF THE AGREEMENT YOU SIGN.**

**NOTICE TO LESSEE: (1) DO NOT SIGN THIS LEASE BEFORE YOU READ IT. (2) YOU ARE ENTITLED TO A COPY OF THIS LEASE. YOU ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS LEASE.**

INDIVIDUAL LESSEE(S)

Lessee Signature: X [signature] | Co-Lessee's Signature: X

BUSINESS LESSEE

Business Name (Print) | Authorized Signer's Name (Print) X | Title (Print)

LESSOR

The authorized signature of the Lessor below has the effect of: (1) accepting the terms and conditions of this Lease; and (2) assigning all right, title and interest in this Lease, the Vehicle and the Guaranty, if any, to the Assignee according to the terms and conditions of the Porsche Financial Services, Inc. - Dealer Agreement between Lessor and Assignee.

Lessor (Dealer) Name (Print): INSKIP PORSCHE | Signature and Title of Authorized Representative: X [signature]

SEE REVERSE SIDE FOR ADDITIONAL TERMS AND CONDITIONS

Original to PFS Copy to Lessee Copy to Co-Lessee

[illegible] the Vehicle free from the claims of others;
[illegible] not use the Vehicle for any unlawful or improper purpose [illegible];
[illegible] not use the Vehicle in any [illegible] enterprise;
[illegible] not [illegible] the Vehicle to [illegible] or otherwise [illegible];
(7) not remove the Vehicle from the United States without written consent of Lessor;
(8) not [illegible] or install equipment in the Vehicle without Lessor's [illegible] [illegible] remove same and replace with original manufacturer [illegible] [illegible];
(9) maintain the Vehicle in compliance with all federal, state and local laws and regulations regarding its operating condition; and
(10) not use the Vehicle in any form of auto racing or [illegible].

16. **TAXES; REGISTRATION AND TITLING. You agree to pay all sales, use, personal property and other taxes, and all fees and charges that are levied in connection with the Vehicle or its use during the Lease Term. You will also pay all taxes that are charged to Lessor by reason of its interest in the Vehicle except for taxes based on net income. The Vehicle will be titled and registered as directed by Assignee. You agree to pay title and registration costs.**

17. OPTION TO PURCHASE.

A. END OF LEASE TERM. At scheduled lease termination, you may purchase the Vehicle "AS IS" for a sum equal to:
(1) The Residual Value;
(2) Plus any past due Monthly Payments and any other amount due under this Lease;
(3) Plus any official fees, taxes and other charges related to purchase of the Vehicle.

B. PRIOR TO END OF LEASE TERM. You have an Option to Purchase the Vehicle "AS IS" at any time prior to the end of the Lease Term. You must notify Lessor at least 10 days before you exercise the Option to Purchase. If you exercise the Option to Purchase at any time prior to the end of the Lease Term, you agree to pay Lessor a sum equal to:
(1) Any past due Monthly Payments and any other amount due under this Lease;
(2) Plus any official fees, taxes and other charges related to the purchase of the Vehicle;
(3) Plus the Residual Value;
(4) Plus the Base Monthly Payment times the number of Monthly Payments not yet due (not applicable if this is a Single Payment Lease);
(5) Minus unearned Rent Charges calculated according to the actuarial method. The term "actuarial method" means the method of allocating Base Monthly Payments (or the Single Payment divided by the Lease Term) between: (i) the reduction of the Adjusted Capitalized Cost to the Residual Value over the Lease Term; and (ii) Rent Charges. Under this method, a Base Monthly Payment (or the Single Payment divided by the Lease Term) is applied first to the accumulated Rent Charge and any remainder is subtracted from, or any deficiency is added to, the balance of the Adjusted Capitalized Cost. Rent Charges are earned on a set monthly schedule regardless of when a Monthly Payment or Single Payment is received. Rent Charges are at their maximum at the beginning of the Lease Term and decrease to their minimum at the end of the Lease Term.

18. **EXCESS WEAR AND USE.**
"Excess Wear and Use" includes, but is not limited to:
A. glass breakage, damage or discoloration;
B. damage to the body, fenders, metal-work, lights, trim, or paint
C. missing equipment that was part of the Vehicle when you accepted delivery of it (if you have not substituted replacement equipment suitable to Lessor);
D. unsafe wheels and tires (tires with less than 1/8 inch of tread); snow tires are not acceptable;
E. torn, damaged or stained dash, floor covers, seats, headliners, upholstery, interior work or trunkliners;
F. mechanical defects and/or any damage remaining after substandard repairs; or
G. damage or any other condition that makes the Vehicle unsafe or unlawful to operate.

19. **RETURN OF VEHICLE.**
Upon termination of this Lease and if you do not exercise the Option to Purchase, you agree to return the Vehicle in good condition, with no Excess Wear and Use, to the Lessor's address shown on the front of this Lease or such other place as Lessor may direct. At that time, you also agree to pay any amount owing under this Lease and all charges, if any, for Excess Wear and Use and excess mileage. If the Vehicle is not returned upon termination of this Lease, this will constitute a default of the Lease.

20. **SCHEDULED TERMINATION.**
Except for Early Termination and Default, this Lease will terminate or end upon:
A. the end of the Lease Term;
B. return of the Vehicle to Lessor;
C. your payment of all amounts owed to the Lessor under this Lease including the Termination Fee and any amounts owed for Excess Wear and Use and excess mileage; and
D. your completion and return to Lessor of an odometer disclosure statement upon return of the Vehicle to Lessor.

[illegible] parts, accessories, equipment and replacement parts will [illegible] with the Vehicle.

22. LOSS OR DESTRUCTION OF VEHICLE.
[illegible] the Vehicle is [illegible], stolen or damaged beyond repair, [illegible] and Lessor will provide you [illegible] [illegible] the substitute vehicle.

[illegible] and Lessor [illegible] Lessor will waive the Early Termination Liability upon Lessor's receipt of the amount of the insurance proceeds [illegible] the following conditions are met:
(1) the insurance coverage [illegible] under the Lease has been maintained and [illegible];
(2) you have complied with all other terms and conditions of the Lease including required Monthly Payments as they came due while awaiting a settlement of [illegible] insurance company;
(3) you have paid Lessor [illegible] deductible required by the insurance policy and [illegible] deductions your insurance company may make in accordance with the policy [illegible] Lessor's claim; and
(4) you have provided Lessor with proper and prompt notice of the loss.

E. REIMBURSEMENT. You agree to reimburse Lessor and Assignee for any loss or damage [illegible] Vehicle or its contents during the Lease Term. You also agree to reimburse Lessor and As[illegible] for all claims, losses and costs arising out of the use or condition of the Vehicle. You [illegible] pay all fines imposed on the Vehicle or on any driver of the Vehicle during the Lease. If you fail to pay the fines and Lessor pays, you will pay to Lessor a $20 handling charge fo[illegible] time Lessor must pay a fine, in addition to the fine or penalty imposed.

24. GENERAL.

A. SECURITY INTEREST. You grant Lessor a security interest, to the extent permitted by stat[illegible] in the loss proceeds of any Vehicle insurance to secure performance of your obligations [illegible] this Lease.

B. OWNERSHIP. You acknowledge that this Lease is a true lease, not a purchase agreement [illegible] You will not own or have any ownership interest in the Vehicle or its replacement [illegible] unless you exercise the Option to Purchase.

C. GOVERNING LAW. This Lease shall be governed by the laws of the state in which it is [illegible] except that the law of the state where the Vehicle is repossessed will govern the repossess[illegible] Repossession effected through legal process will be governed by the laws of the state in w[illegible] legal process is brought.

D. MODIFICATION. No modification of any of the terms and conditions of this Lease sha[illegible] valid, and you expressly waive the right to rely on any modification, unless made in wr[illegible] and signed by Lessor.

E. ASSIGNMENT. You acknowledge that this Lease will be assigned to Assignee. You fu[illegible] acknowledge that Assignee will acquire all of Lessor's interest in this Lease and in the Ve[illegible] and will be entitled to all of the rights and remedies granted to Lessor pursuant to the te[illegible] and conditions of this Lease. You agree that Assignee will not have to make any repairs [illegible] maintain the Vehicle, obtain any insurance or perform any other service Lessor has agree[illegible] perform under this Lease. You agree to look only to Lessor for performance of these servi[illegible] Assignee may be deemed an additional lessor under the Consumer Leasing Act.

F. ENFORCEMENT. This Lease shall bind and inure to the benefit of the heirs, executo[illegible] administrators, and assigns of the parties to this Lease. No delay or omission by Lesso[illegible] Assignee in the enforcement of any of its rights shall constitute a waiver. Any provis[illegible] on [illegible] Lease prohibited by law or otherwise deemed invalid or unenforceable shall not invalidate remaining provisions of this Lease.

G. ODOMETER STATEMENT. Federal law requires you to complete a statement of the Vehic[illegible] mileage at the end of this Lease. Failure to complete an odometer disclosure statement [illegible] return it to Lessor or making a false statement therein may result in fines and imprisonme[illegible] If the Vehicle's odometer becomes inoperative or malfunctions, you must notify Lessor of [illegible] fact and have the odometer repaired within 30 days.

H. ENTIRE AGREEMENT. Important: Read before signing. The terms of this Lease should be read carefully because only those terms in writing are enforceable. No other terms and oral promises not contained in this Lease may be legally enforced. You may change the terms of this Lease only by another written agreement. This Lease is a final expressi[illegible] of the credit agreement between you and Lessor. This Lease may not be contradict[illegible] by evidence of any prior oral credit agreement or of a contemporaneous oral cred[illegible] agreement between you and Lessor.

[illegible]

## ADDITIONAL TERMS AND CONDITIONS

**14. LATE CHARGE. RETURNED INSTRUMENT CHARGE.**
If all or any portion of a Monthly Payment is not received within 10 days after it is due, you will pay a late charge of 5% of the scheduled payment. This late charge will not exceed $[illegible] if you sign this Lease in Kansas and it is subject to the Kansas Consumer Credit Code. If you sign this Lease in Maine and it is subject to the Maine Consumer Credit Code, the late charge will [illegible] and will only be due if all or any portion of a Monthly Payment is not [illegible] within 15 days after it is due. If you sign this Lease in Iowa and it is subject to the Iowa Consumer Credit Code a late charge will not be assessed.

If any check, draft or order or other similar instrument is returned to Lessor unpaid for any reason, including, but not limited to, non-sufficient funds, you will pay a returned instrument charge of $15, to the extent allowed by applicable law.

**15. INSURANCE.**
*You agree to provide insurance coverage in the amount and types indicated below at your expense during the Lease Term:*
A. comprehensive fire, theft and combined additional coverage insurance with a deductible of not more than $1,500;
B. collision and upset insurance with a deductible amount of not more than $1,500, and
C. automobile liability insurance with limits of not less than $100,000 for any one person for bodily injury or death, and $300,000 for any one accident for bodily injury or death and $50,000 for property damage, or $300,000 Combined Single Limit (minimum). If the vehicle is [illegible] or if the vehicle is titled, licensed and registered in Florida, Combined Single Limit coverage must be a minimum of $500,000.

You agree that all insurance will protect Lessor and you will name Assignee as additional insured and loss payee. You agree to provide Lessor with all information it requests regarding the insurance and any claim that might arise from the use or maintenance of the Vehicle. You agree to provide Lessor with a copy of the insurance policy that insures the Vehicle.

**The insurance listed above is required in connection with this Lease. You have the option of providing the required insurance through an existing policy of insurance owned or controlled by you or through a policy paid for by you and obtained from any insurance company authorized to transact business in the state in which this Lease was signed. Lessor may for reasonable cause decline the insurance provided by you.**

If the vehicle insurance is cancelled for any reason, you agree to immediately obtain new insurance on the Vehicle and provide a copy of the insurance policy to Lessor. You agree not to operate the Vehicle during the time that it is not insured. In the event of a loss, you hereby assign to Lessor any monies payable under such insurance policy. You agree that Lessor may endorse your name upon any check, draft, order or other similar instrument representing payment to you of such monies. You also agree that Lessor may settle or release any claim to such insurance proceeds.

**No physical damage or liability insurance coverage for bodily injury or property damage caused to others is included in this Lease.**

**NOTICE TO FLORIDA LESSEES: The valid and collectible liability insurance and personal injury protection insurance of any authorized rental or leasing driver is primary for the limits of liability and personal injury protection coverage required by sections 324.021(7) and 627.736, Florida Statutes.**

**16. VEHICLE OPERATION.**
A. VEHICLE MAINTENANCE AND OPERATING COSTS. You are responsible for the maintenance and servicing of the Vehicle. You agree to keep the Vehicle in good condition and operating order. You agree to service and repair the Vehicle according to the maintenance schedule required by the manufacturer of the Vehicle and to ensure that the warranty, if any, remains valid. You agree to comply with all manufacturer recall notices. You also agree to pay the cost of maintenance, repair and operating expenses.

B. VEHICLE USE. You agree to:
(1) not allow, if the Lessee is an individual, anyone other than you or your spouse (provided that both you and your spouse are properly insured and maintain a valid, unrestricted drivers license) to operate the Vehicle;
(2) allow Lessor to inspect the Vehicle at any time during the Lease Term, upon reasonable notice;
(3) keep the Vehicle free from the claims of others;
(4) not use the Vehicle for any unlawful or improper purpose or for hire;
(5) not use the Vehicle in any [illegible] enterprise;
(6) not use the Vehicle to push, pull or otherwise tow any object;
(7) not remove the Vehicle from the United States without written [illegible]

**21. EARLY TERMINATION.**
A. [illegible] RIGHT TO TERMINATE EARLY. You may terminate this Lease at any time before the end of the Lease Term. If you elect to terminate this Lease before the end of the Lease Term and you do not exercise your Option to Purchase, you will be liable for the Early Termination Liability as defined below.

B. LESSOR'S RIGHT TO TERMINATE EARLY. We may terminate this Lease before the end of the Lease Term if you are in Default. If you do not exercise your Option to Purchase, upon termination, Lessor shall be entitled to the following charges: (1) the Early Termination Liability as defined below; **plus** (2) reasonable expenses, if any, incurred as a direct result of retaking the Vehicle, holding it, preparing it for sale and selling it; **plus** (3) if Lessor hires an attorney who is not a salaried employee of Lessor to collect what you owe, you will pay reasonable attorneys' fees.

C. EARLY TERMINATION LIABILITY. The early termination liability ("Early Termination Liability") is calculated as follows:
(1) The Termination Fee;
(2) **Plus** any past due Monthly Payments and any other amount due under this Lease;
(3) **Plus** any official fees and taxes related to early termination;
(4) **Plus** the Residual Value;
(5) **Plus** the Base Monthly Payment times the number of Monthly Payments not yet due (not applicable if this is a Single Payment Lease);
(6) **Minus** unearned Rent Charges calculated according to the actuarial method. See description of the "Actuarial Method" in Section 17(B)(5) above.
(7) **Minus** the Realized Value of the Vehicle, which is the net amount, if any, Lessor receives from the sale of the Vehicle sold at wholesale in a commercially reasonable manner.
(8) **Minus** any payments received by Lessor under any insurance policy on the Vehicle that have not been used to repair or replace the Vehicle.

If you disagree with the Realized Value of the Vehicle, within 14 days after you are given notice of your Early Termination Liability, you may obtain, at your own expense, from an independent third party agreeable to both you and Lessor, a professional appraisal of the wholesale value of the Vehicle which could be realized at sale. The appraised value shall then be used as the Realized Value.

**22. DEFAULT.**
A. DEFAULT. The following are events of default ("Default"):
(1) you fail to pay any Monthly Payments when due;
(2) you allow, if the Lessee is an individual, anyone other than you or your spouse (provided that both you and your spouse are properly insured and maintain a valid, unrestricted drivers license) to operate the Vehicle;
(3) you fail to return the Vehicle upon termination of this Lease;
(4) you fail to comply with any of the terms and conditions of this Lease;
(5) you are the subject of a proceeding in bankruptcy, receivership or insolvency;
(6) you make an assignment for the benefit of creditors;
(7) you die during the Lease Term;
(8) you fail to keep the Vehicle insured as required by this Lease;
(9) you rent, sublease, assign or otherwise transfer any interest in this Lease, the Vehicle, or the right to use the Vehicle, without the prior written consent of Lessor;
(10) you make any material misrepresentation on your credit application;
(11) you fail to answer traffic summons or pay any traffic tickets or other fines when due;
(12) the Vehicle is seized or confiscated for any reason by a law enforcement agency;
(13) the Vehicle is destroyed, stolen, or damaged beyond repair and the Vehicle insurer denies full coverage or liability; or
(14) anything else occurs that Lessor believes endangers the Vehicle or its condition, impairs your ability to pay or compromises Lessor's ownership interest in the Vehicle.

B. REMEDIES. If you are in Default, Lessor may terminate this Lease and Lessor may exercise any of its rights or remedies at law or as provided in this Lease, including recovering charges for early termination. If you are in Default, Lessor also has the right to take possession of the Vehicle. Lessor may, without use of force or other breach of the peace, enter the premises where the Vehicle is and take immediate possession of the Vehicle, including any equipment or accessories. If Lessor takes possession, you are not released from any obligation under this Lease.

If during repossession of the Vehicle, Lessor comes into possession of personal or other property, Lessor will [illegible] you. If you do not claim the property within thirty (30) days after Lessor has repossessed the Vehicle, Lessor may dispose of the property in any manner [illegible] [illegible] this property. [illegible]

DEC 07-2005 WED 02:35 PM FAX NO. P. 02/02

PORSCHE

Porsche Cars North America, Inc.
980 Hammond Drive
Suite 1000
Atlanta, Georgia 30328
(770) 290-3500 Fax: (770) 290-3700

December 6, 2005

Girard R. Visconti, Esq.
Visconti and Boren, Ltd
55 Dorrance Street
Providence, RI 02903-2219

**VIA UPS OVERNIGHT**

Re: **OFFER OF SETTLEMENT – CONFIDENTIAL**
Marc S. Weinberg, M.D.
2002 Porsche Turbo Coupe – VIN WP0AB299X2S685594

Dear Mr. Visconti:

This letter is to restate Porsche Cars North America's and Inskip Porsche's goodwill offer to your client for a check in the amount of $10,905.28. Please be advised that this offer is being made as a goodwill gesture to compensate Dr. Weinberg for any inconvenience and to express our appreciation for his loyalty to the Porsche brand.

To accept our offer, please have Dr. Weinberg sign below and return, with a copy of the vehicle's sale/lease contract, via fax to 770-290-5468. If we do not hear from you by December 20th, we will assume you/your client have declined our offer and it will be withdrawn.

Very truly yours,

Steve Sabatini
Steve Sabatini
Regional Service Manager

cc: William Gibb, General Manager, Inskip Porsche
Carletta Cannon, Customer Relations Specialist, Porsche Cars North America

---

I hereby accept the offer outlined above. I understand that this offer is based upon the service history of the vehicle to this point and my acceptance of this offer is in settlement of any and all claims based upon that portion of the service history. I agree that the terms of this offer are legally confidential between Porsche Cars North America, the Porsche dealership(s) involved and me, and that the terms will not be disclosed by me, by any means, to any other person or entity.

Marc S. Weinberg MD 12-7-05
Marc S. Weinberg, M.D. Date

Please fax signed form and sales/lease contract to (770) 290-5468 by 12/20.

December 20, 2005

*VIA FACSIMILE TO 823-5621*

Mr. William Gibb
Penske Inskip Porsche
1515 Bald Hill Road
Warwick, RI 02886

**Re:** ***Marc S. Weinberg, M.D./VIN #WPOAB299X2S855594/2002 Porsche Turbo***

Dear Mr. Gibb:

Pursuant to our phone call on this day, you have confirmed that Dr. Weinberg's complete and total obligation to Inskip Porsche and especially Porsche Financial is $10,905.28.

Based on that representation, I am enclosing Porsche's letter addressed to me of December 5, 2005 signed by Dr. Weinberg and dated 12-9-05.

Dr. Weinberg should be expecting the aforesaid sum by check from Porsche and will forward that check and/or exact payment to Porsche Financial to conclude this matter.

Thank you for your cooperation.

Sincerely,

Girard R. Visconti

GRV/ch
Enclosure
cc via fax: *Marc S. Weinberg, M.D.*
*Steven Sabatini, Regional Manager*
*Mark Brooks, Porsche Financial*

January 11, 2006

***VIA FACSIMILE TO (914) 681-8730***
***AND REGULAR MAIL***
Ronald L. Konove, Esquire
Konove and Konove, P.C.
301 Old Tarrytown Road
White Plains, NY 10603

***Re:*** ***Marc S. Weinberg, M.D.***
***Porsche Financial Services Acct. # 1100022521***

Dear Mr. Konove:

Enclosed find Porsche check in the sum of $10,905.28 payable to Dr. Marc Weinberg, which has been endorsed to Porsche Financial. This matter is now concluded in that any and all claims against Dr. Weinberg are resolved.

Please confirm that Dr. Weinberg's credit ratings have not been affected by this transaction.

Very truly yours,

Girard R. Visconti

GRV:sm

cc via fax: *Penske Inskip Porsche*
*Marc S. Weinberg, M.D.*

| Vendor Number | Vendor Name |
|---|---|
| 150014420 | ONE TIME VENDOR - no w/h code |

| Check number | Date | Currency | Payment amount | Payment Document |
|---|---|---|---|---|
| 472580 | 01/06/2006 | USD | 10,905.28 | 900021161 |

| Document | Your document | Date | Deductions | Gross amount |
|---|---|---|---|---|
| 2100232243 | DR. MARC WEINBER VIN--WP0AB299X2S685594 | 12/21/2005 | 0.00 | 10,905.28 |
| Sum total | | | 0.00 | 10,905.28 |

Porsche Cars North America

THIS CHECK HAS A MICROPRINT BORDER AND THE PAPER CONTAINS TRUE WATERMARK - HOLD TO LIGHT TO VIEW WATERMARK

PORSCHE
Porsche Cars North America
980 Hammond Drive, Suite 1000
Atlanta, GA 30328

Bank One, NA
Chicago, IL

70-2322 / 719
650177066
Account Number

Date 01/06/2006 Check No. 472580

*** TEN THOUSAND NINE HUNDRED FIVE USD and 28/100 ***

********10,905.28* USD

Two Signatures Required over $10,000

DR.
MARC WEINBERG
82 TALBOT WAY
SEEKONK MA 02771

By: [signature]
Its:

By: [signature]
Its: President

⑈472580⑈ ⑆071923228⑆ 650177066⑈

Porsche Financial Services
4343 Commerce Court, Suite 300
Lisle, IL 60532

PORSCHE

Date: 09/23/05

[illegible]

Marc S. Weinberg
82 Talbot Way
Seekonk, MA 02771

RE: Account #: 1100022521
Date Due: 09/13/05
Payment Amount: $1,319.41

| | |
|---|---|
| Payment(s) Due | $1,319.41 |
| Late Charges: | $65.97 |
| Other Charges: | $0.00 |
| Total Amount Due: | $1,385.38 |

Dear Marc S. Weinberg:

Our records indicate that your account is now past due. Please remit your payment in the amount of $1,385.38 to the billing address on your monthly statement.

Should there be any misunderstanding regarding the date due, amount of your payment, or any other problems with your account, please contact our Customer Service Department at (800) 505-1041.

If you have already sent the payment, kindly disregard this notice and accept our thanks.

Sincerely,

Porsche Financial Services

Billing Address
Porsche Financial Services
P.O. Box 4253
Lisle, IL 60532

Porsche Financial Services
[illegible] Commerce Court, Suite [illegible]
[illegible] IL [illegible]

IF YOU SHOULD HAVE ANY QUESTIONS CONCERNING YOUR ACCOUNT, PLEASE CONTACT OUR CUSTOMER SERVICE DEPARTMENT AT 1 800-505-1041.

[illegible]

10-13-05

[illegible]-25-05

MARC S. WEINBERG
32 TALBOT WAY
SEEKONK, MA 02771

11C0022521

PORSCHE PAYMENT CENTER

| | | | | | |
|---|---|---|---|---|---|
| 02 PORSCHE | 996420S | PRIOR BILLING AND MISCELLANEOUS CHARGES | | | |
| | | BASE RENT | 1,256.58 | 62.83 | 1,319.41 |
| | | TOTAL | | | 1,319.41 |
| | | CURRENT LATE CHARGES | 65.97 | .00 | 65.97 |
| | | BASE RENT | 1,256.58 | 62.83 | 1,319.41 |

[illegible] 2,704.79

MARC S. WEINBERG
32 TALBOT WAY
SEEKONK, MA
02771

LEASE STATEMENT

PORSCHE PAYMENT CENTER
BOX 371357
PITTSBURGH PA 15250-7357

11C0022521

10-13-05

2,704.79

1501 1C0022521 7702704791

# PORSCHE

Hi, Terry 401-421-7302

Let me know what you think

Porsche Financial Services
4343 Commerce Court, Suite 300
Lisle, IL 60532

IF YOU SHOULD HAVE ANY QUESTIONS CONCERNING YOUR ACCOUNT, PLEASE CONTACT OUR CUSTOMER SERVICE DEPARTMENT AT 1-800-505-1041.

374400 3204966 0300 0008165 0008165 053 0

Due Date: 03-13-06 Billing Date: 02-21-06

Account Number 1100022521

MARC S. WEINBERG
32 TALBOT WAY
SEEKONK, MA 02771

Check payable to: PORSCHE PAYMENT CENTER

| | DESCRIPTION | AMOUNT | TAX | TOTAL |
|---|---|---|---|---|
| 02 PORSCHE 396420S | PAYMENTS APPLIED | 3,851.76- | 192.59- | 4,044.35- |
| | TOTAL | | | 4,044.35- |
| | BASE RENT | 1,256.58 | 62.83 | 1,319.41 |

DETACH AT PERFORATION AND RETURN BOTTOM PORTION WITH PAYMENT. DO NOT SEND CASH.

TOTAL DUE ➤ 2,724.94-

374400871

MARC S. WEINBERG
32 TALBOT WAY
SEEKONK, MA
02771

IF NEW ADDRESS OR PHONE NUMBER and RECORD CHANGES HERE.

WORK: ( ) HOME: ( )

LEASE STATEMENT

PORSCHE PAYMENT CENTER
BOX 371357
PITTSBURGH PA 15250-7357

| | |
|---|---|
| AMOUNT PAID | |
| ACCOUNT NBR | 1100022521 |
| DUE DATE | 03-13-06 |
| TOTAL DUE | 2,724.34- |

480110002252177027249 47

PORSCHE

Porsche Financial Services
4343 Commerce Court, Suite 300
Lisle, IL 60532

0006207 374400 962006.7 0000 0006207 276 0 09 01 07 06 15 07

1100022521

MARC S. WEINBERG
82 TALBOT WAY
SEEKONK, MA 02771

PORSCHE PAYMENT CENTER

| | | | | | |
|---|---|---|---|---|---|
| 02 PORSCHE | 996420S | EXCESS WEAR AND TEAR | 990.16 | 49.51 | 1,039.67 |
| | | TERM CHARGE | 350.00 | .00 | 350.00 |
| | | LESS: CREDITS POSTED (INCLUDES SECURITY DEPOSIT OF | | 0.00) | 86.12- |
| | | TOTAL BALANCE | | | 1,303.55 |

PAYMENT PLAN: 1 PAYMENT(S) OF $ 1,303.55
PRIOR BALANCE 1,303.55

1,303.55

MARC S. WEINBERG
TALBOT WAY
SEEKONK, MA
771

LEASE STATEMENT

PORSCHE PAYMENT CENTER
PO BOX 740724
CINCINNATI OH 45274-0724

R1100022521
09 01 07
1 303.55

530110000225217701403552

PORSCHE

Porsche Financial Services
4343 Commerce Court Suite 300
Lisle IL 60532

0003093 379900 3543751 0000 0003093 199 0

08 01 07

07 12 07

1100022521

MARC S. WEINBERG
82 TALBOT WAY
SEEKONK, MA 02771

PORSCHE PAYMENT CENTER

| | | | | | |
|---|---|---|---|---|---|
| 02 PORSCHE | 9964208 | EXCESS WEAR AND TEAR | 990.16 | 49 51 | 1,039 67 |
| | | TERM CHARGE | 350.00 | .00 | 350.00 |
| | | LESS: CREDITS POSTED (INCLUDES SECURITY DEPOSIT OF | | 0.00) | 86 12- |
| | | TOTAL BALANCE | | | 1 303.55 |

PAYMENT PLAN. 1 PAYMENT(S) OF $ 1,303.55

PRIOR BALANCE 1,303 55

**1,303.55**

MARC S. WEINBERG
32 TALBOT WAY
SEEKONK, MA
02771

LEASE STATEMENT

PORSCHE PAYMENT CENTER
PO BOX 740724
CINCINNATI OH 45274-0724

R1100022521

08-01-07

1,303.55

4801100022521770130355

PORSCHE

Porsche Financial Services
[illegible] Commerce Court, Suite 300
[illegible]

0002730 474400 1448570 0000 0002730 014 0 02 01 07 01 12 07

1100022521

MARC S. WEINBERG
82 TALBOT WAY
SEEKONK, MA 02771

PORSCHE PAYMENT CENTER

| | | | | | |
|---|---|---|---|---|---|
| 02 PORSCHE | 9964205 | EXCESS WEAR AND TEAR | 990.16 | 49.51 | 1,039 67 |
| | | TERM CHARGE | 350.00 | .00 | 350.00 |
| | | LESS: CREDITS POSTED (INCLUDES SECURITY DEPOSIT OF | | 0.00) | 86.12- |
| | | TOTAL BALANCE | | | 1,303 55 |

PAYMENT PLAN: 1 PAYMENT(S) OF $ 1,303.55
PRIOR BALANCE 1,303.55

1,303.55

IARC S. WEINBERG
2 TALBOT WAY
EEKONK, MA
2771

LEASE STATEMENT

PORSCHE PAYMENT CENTER
PO BOX 740724
CINCINNATI OH 45274-0724

R1100022521

02-01-07

1,303.55

4301100002252177013035 52

PORSCHE

Porsche Financial Services
4343 Commerce Court, Suite 300
Lisle, IL 60532

1219302
Attn: Jerry - Can you believe this
J. Visconti
Lin & Marc

0002217 374400 3299590 0000 0002217 183 0

MARC S. WEINBERG
82 TALBOT WAY
SEEKONK, MA 02771

Due Date: 07-01-06 Billing Date: 06-30-06
Account Number: 1100022521

Check payable to: PORSCHE PAYMENT CENTER

| | DESCRIPTION | AMOUNT | TAX | TOTAL |
|---|---|---|---|---|
| 02 PORSCHE 996420S | EXCESS WEAR AND TEAR | 990.16 | 49.51 | 1,039.67 |
| | TERM CHARGE | 350.00 | .00 | 350.00 |
| | LESS: CREDITS POSTED (INCLUDES SECURITY DEPOSIT OF | | 0.00) | 86.12- |
| | TOTAL BALANCE | | | 1,303.55 |

PAYMENT PLAN: 1 PAYMENT(S) OF $ 1,303.55
PRIOR BALANCE
CURRENT DUE 1,303.55

DETACH AT PERFORATION AND RETURN BOTTOM PORTION WITH PAYMENT. DO NOT SEND CASH.

TOTAL DUE ▶ 1,303.55

74400371

MARC S. WEINBERG
82 TALBOT WAY
SEEKONK, MA
02771

☐ IF NEW ADDRESS OR PHONE NUMBER and RECORD CHANGES HERE.

NAME
STREET ADDRESS COUNTY
CITY STATE/PROVINCE ZIP/POSTAL CODE
PHONE
WORK: ( ) HOME: ( )

LEASE STATEMENT

| | |
|---|---|
| AMOUNT PAID | |
| ACCOUNT NBR | R1100022521 |
| DUE DATE | 07-01-06 |
| TOTAL DUE | 1,303.55 |

PORSCHE PAYMENT CENTER
BOX 371357
PITTSBURGH PA 15250-7357

4801100022521770130355 2

EQUIFAX

# 3-in-1 Credit Report

## Personal Information

This 3-in-1 Credit Report is available for you to view until 09/21/2007. This report will not update. If you would like a current 3-in-1 Credit Report, you may order another by clicking "Order New Report" above.

### Registration Information

**Name:** MARC WEINBERG
**Address:** 82 TALBOT WAY SEEKONK, MA 027712302

**PORSCHE CREDIT CORPORATION**

| | Equifax | Experian | TransUnion |
|---|---|---|---|
| | Reported | Reported | Reported |
| **Account Type:** | Installment | Installment | Installment |
| **Account Number:** | 110602XXXX | 110602XXXX | 110602XXXX |
| **Payment Responsibility:** | Individual | Individual | Individual |
| **Date Opened:** | 06/2003 | 06/2003 | 06/2003 |
| **Balance Date:** | 07/2007 | 07/2007 | 07/2007 |
| **Balance Amount:** | $1,303 | $1,303 | $1,303 |
| **Monthly Payment:** | $1,303 | $1,303 | $1,303 |
| **High/Limit:** | $47,498 | $47,498 | $47,498 |
| **Account Status:** | As Agreed | As Agreed | As Agreed |
| **Past Due Amount:** | $0 | $0 | $0 |
| **Comments:** | LEASE-EARLY TERMINATION/MERCHANDISE RETURNED BEFORE THE END OF THE TERM AUTO | CURRENT ACCOUNT | LAST REPORTED DELINQUENCIES: 07/2005 =14 EARLY TERMINATION/STATUS PEND |